HUMBLE OIL & REFINING CO. *v.* RANKIN et al.

In Banc. Oct. 24, 1949.

No. 37209 (42 So. (2d) 414)

404

Heidelberg & Roberts, Truly & Truly, and Tom Caldwell, for appellant.

James M. Walker, W. E. Morse, and Swep S. Taylor, for appellees.

**Hall, J.**

On March 12, 1947 appellant filed a bill of complaint against the appellees alleging that it held a valid oil, gas and mineral lease, dated October 29, 1941, for a primary term of five years and as long thereafter as oil, gas or other mineral is produced from the land therein described or land which is pooled therewith. The lease is on one of the forms in general use in this state and identified as Producers 88 (Rev. 11-39) with Pooling Provision. It provides that the lessee is given the right and power to pool or combine the acreage therein covered, or any portion thereof, with other land in the immediate vicinity thereof, in a unit or units not exceeding 40 acres each. It further provides that if gas is discovered the lessors shall receive a royalty of one-eighth of the amount realized from the sale thereof, but if the gas is not used or

sold the lessor may pay as royalty $100.00 per well per year, in which event it will be considered that gas is being produced within the meaning of the lease so as to continue it in force beyond the primary term so long as said $100.00 per year is paid upon a "shut-in" gas well.

The bill alleges that the original lease covered 11 acres of land but that by instruments subsequently executed by appellees during the primary term of five years the description was changed so as to cover 35.9 acres, and that by other instruments executed by appellees during the primary term of the original lease, with the change in the description of land, was ratified by the appellees. It further alleges that some of the appellees conveyed fractional nonparticipating royalty interests to R. D. McMahan, who is named as a defendant to the bill.

The bill further charges that on August 6, 1946, the appellant pooled 15 acres of the appellees' said 35.9 acres with 25 acres of adjoining land owned by M. R. Smith and others upon which it also held a lease, and that it began the drilling of a well on the 25 acres of Smith land while the leases were in force and effect and completed a gas well capable of producing gas in paying quantities on or about November 5, 1946, but because of the absence of available pipe lines there was no immediate market for the gas from said well and it was immediately shut in to prevent waste. The bill then charges that under the provisions of the lease appellant is given the right to pay as royalty $100.00 per year per well and that upon payment thereof it will be considered that gas is being produced within the meaning of the lease, as a consequence of which the lease will, of course, be continued in effect beyond October 29, 1946, the date of expiration of its primary term.

The bill also alleges that appellant has made investigation to determine the persons entitled to said royalty and the proportions thereof to which each is entitled,

but that the appellees are not in agreement among themselves as to which of them is entitled to receive said royalty, nor as to the proportions to which they are entitled, and that appellant should not be required to decide at its own peril as to which have the better rights; that it believes and charges that it may be required to pay greater sums than the actual fixed amount of the debt thus owed by it and that it may further be vexed with numerous suits by those claiming said debt or a part of it; that it has no interest in the whole matter beyond paying the debt to whom it is due and has no preference as between the various claimants and occupies a position equivalent to that of a naked trustee or stakeholder with respect to said $100.00; that the contest involved is not a contest between appellant and appellees, but is a contest only between the appellees themselves with none of whom appellant is in collusion.

The $100.00 was tendered into court and the bill prays for process for appellees requiring them to appear and assert whatever claim they might have thereto and for a discharge and acquittal of appellant, and that the court then determine as between the various appellees who is entitled to said money and in what proportion. The bill also prays for general relief.

Some of the original defendants appeared and filed separate answers to the bill, denying that it is a strict bill of interpleader and averring that it was filed for the purpose of adjudicating title, that there was no development on said property within the primary term of the lease, and that consequently the lease has no life, force or effect. The answers deny that there was a valid unitization of 15 acres of appellees' land with 25 acres of the Smith land, and deny that their land was thereby held under lease beyond its primary term, and deny that the $100.00 "shut-in" royalty is payable to them, deny that appellant has no interest in the matter beyond paying the debt, deny that it is a naked trustee or stakeholder,

deny that there is no contest between appellant and appellees, and allege that the suit is merely a fraudulent attempt to hold the lease beyond its primary term without complying with the terms thereof. With the answers they filed cross-bills alleging that the lease has expired and that the attempted unitization of a portion thereof with a portion of the Smith property did not effectually extend it beyond its primary term; that the appellant has drilled a producing oil well on lands adjoining those described in the lease which is draining oil from beneath the lands of appellees and that appellant has breached its obligation to drill an off-set well upon their lands. The cross-bills prayed for a cancellation of all right, title and interest of appellant in the lands in question, and, in the alternative, that appellant be required to drill an off-set well upon appellees' lands, and, in the further alternative, that the operation of the oil well on the adjacent land be enjoined, and, in the further alternative, that damages on account of the alleged drainage be awarded to appellees.

Appellant answered the cross-bills in detail, and, in addition, filed demurrers thereto. Before a hearing on the demurrers appellant amended its original bill by tendering into court an additional $100.00 as shut-in royalty on the gas well for the second year. The chancellor overruled the appellant's demurrers to the cross-bills and granted an appeal to settle all the controlling principles of the case.

Some members of this Court are of the opinion that the appeal was improperly granted, for the reason that it cannot settle all the controlling principles of the case, and that consequently the appeal should be dismissed, but, since the appellant makes no contention that the cross-bills do not state a cause for relief and confines its argument solely to the question that the bill of complaint is a strict bill of interpleader and that no cross-bill can in any event be filed by the defendants therein named, there-

by making this the only principle involved in the case at this time, we have concluded to entertain the appeal and decide the question.

The appellant relies upon the general rule, supported by many authorities, to the effect that when a strict bill of interpleader is filed the defendants can go no further than to show that the complainant is not entitled to main-. tain his bill and that the defendants cannot ask for any specific relief against the complainant. We are of the opinion, however, that this case comes within the rule stated in 48 C.J.S., Interpleader, § 45, where it is said,. ██ ██ "Ordinarily the only relief granted against a complainant in interpleader is to have the action dismissed; but under some circumstances affirmative relief may be granted against him." In the case of Williams v. Penn. Mutual Life Insurance Co., 160 Miss. 408, 133 So. 649, this Court held that when a party is brought into court by interpleader and makes a claim for a greater amount than that admitted to be due, and it flows out of the same contract or transaction, the interpleading party is not a disinterested stakeholder and is subject to a contest for liability greater than it admits to be due.

██ ██ The contest asserted by appellees under their cross-bills grows out of the same contract as that upon which appellant predicates its suit. The appellees, by the filing of the suit against them, are placed in such a position that they are compelled to either admit, or deny that the contract is still in effect. If the court should accept the money tendered by the bill of complaint and discharge the appellant and leave the appellees to contest with each other over a division thereof, this would be, in effect, an adjudication that the original lease has been kept alive beyond its primary term, and, at least, the appellees would be left in such a position that they might be estopped to afterward contest the same. The, bill of complaint itself sets up a state of facts upon which. the court could adjudicate its extension beyond the pri-

mary term under the prayer for general relief. The bill depends wholly upon appellant's averment that the lease has been extended; the appellant is vitally interested in sustaining that position; it is further interested in having the appellees accept the tender and thereby acquiesce in appellant's contention. Under these circumstances we are of the opinion that the appellant is not such a disinterested stakeholder as to render the cross-bills improper as a matter of law and equity.

We are not unmindful of the fact that the appellees, in the absence of their cross-bills, could by sufficient proof under their answers defeat the suit upon the ground that it is not in fact a strict bill of interpleader, in which event the parties would be left in the same situation that existed before the filing of the suit with their respective claims and contentions still unsettled. But ▮▮ if appellant is not in fact such a disinterested stakeholder as to entitle it to maintain its suit as a strict bill of interpleader, then under the general principle which was followed by this Court in the Williams case, supra, we can see no good reason why the appellees should not be permitted to file their cross-bills and pray for affirmative relief in connection with the very contract upon which the whole action is based for they could certainly proceed with an original suit upon identically the same allegations. The policy of the equity courts in this state is aptly stated in Griffith's Mississippi Chancery Practice, Sec. 101, as follows: " . . . ▮▮ when equity takes jurisdiction of a matter for one purpose it will administer complete relief as to every portion or feature of the controversy and, so far as practicable, quiet the whole of the issues. This latter principle is found expressed in the maxim of equity that equity delights to do justice completely and not by halves, or as it is sometimes stated, when equity takes jurisdiction for one purpose it will retain jurisdiction for all purposes."

Section 1296 of the Mississippi Code of 1942 provides, in part, that "A defendant in a chancery suit may make his answer a cross-bill against the complainant, or his codefendant or defendants, or all of them; and may introduce any new matter therein material to his defense, and may require the same to be answered . . . ."

In Stansel v. Hahn, 96 Miss. 616, 50 So. 696, it was held that a cross-bill cannot introduce entirely new matter, neither necessary for defense nor in any way germane to the only matter involved in the original bill. In Magruder v. Hattiesburg Trust & Banking Co., 108 Miss. 857, 67 So. 485, it was held that while the matters in a cross-bill must be germane to those involved in the original bill, the cross-bill is in fact an auxiliary to the original bill and is a proceeding to complete the determination of all matters in litigation, to bring every disputed matter fully before the court, and to obtain full relief for all the parties touching the matters in the original bill. In Mississippi Chancery Practice, Sec. 381, Judge Griffith discusses at length what is meant by the requirement that the cross-bill shall be germane to the original bill, and summarizes his conclusions thus: "The spirit of the modern rule is this: █ If the matter introduced by the cross-bill be such that to the end of a just and complete determination of the whole matter as between all the parties to the suit, it will promote the convenient administration of justice and avoid delay and circuity of action, and it be not incongruous, foreign and disconnected as relates to the controversy involved in the original bill, then it is fit to be so introduced and heard, the discretion of the court in respect to it being similar to that which is exercised upon objections to original bills on the ground of multifariousness."

 █ Now, as heretofore pointed out, the original bill alleges the granting of the lease and the term thereof, a copy being attached as an exhibit thereto; it alleges the change in description, the ratification thereof, at-

taching copies thereof as exhibits; it alleges that the primary term of five years would have expired except for the drilling operations, but that because thereof it has been extended; it alleges the completion of a gas well on a part of the Smith land, the shutting in of the well for lack of immediate market for the gas, and appellant's consequent right to pay $100.00 per year as shut-in royalty, and it contains a prayer for general relief. Upon these allegations and prayer the court could enter a decree adjudicating that the lease on the land of appellees has been extended beyond the primary term. The answers and cross-bills are responsive to these allegations and contain no entirely new matter but only averments which are necessary for defense and germane to the matters involved in the original bill, bringing every disputed matter fully before the court to the end that there may be a just and complete determination of the whole matter as between all the parties with avoidance of delay and circuity of action. Upon the case presented by the record here we cannot say that the decree of the chancellor is erroneous, and consequently the same will be affirmed and the cause remanded.

Affirmed and remanded.