# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CT-01208-SCT

*IN THE MATTER OF THE GUARDIANSHIP OF DAISY PEARL SAVELL: DAVID C. DUNBAR, ESQ. AND THE LAW FIRM OF DUNBARMONROE, PLLC*

*v.*

*SHIRLEY RENFROE AND MARGUERITE JORDAN*

## <u>ON WRIT OF CERTIORARI</u>

| | |
|---|---|
| DATE OF JUDGMENT: | 07/18/2001 |
| TRIAL JUDGE: | HON. H. DAVID CLARK, II |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | DAVID C. DUNBAR |
| | WILEY JOHNSON BARBOUR |
| ATTORNEY FOR APPELLEES: | HEZ L. HOLLINGSWORTH |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | THE JUDGMENTS OF THE COURT OF APPEALS AND THE SCOTT COUNTY CHANCERY COURT ARE REVERSED AND RENDERED - 07/01/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Daisy Pearl Savell executed a durable power of attorney in favor of her two daughters, Shirley Renfroe and Marguerite Jordan. Renfroe and Jordan entered into a contract of employment with Attorney David C. Dunbar to pursue a personal injury claim on Savell's behalf. A settlement offer was eventually made on this claim. Savell's mental capacity diminished after the power of attorney was executed, and, at

the time of the settlement offer, she was no longer of sound mind; therefore, Dunbar petitioned the Scott County Chancery Court for approval of the proposed settlement. Chancellor H. David Clark, II, approved the settlement, but reduced Dunbar's attorney's fees from the 40% contingency fee as provided in the contract to a 33 1/3 % contingency fee. Dunbar appealed, and we assigned this case to the Court of Appeals, which in a divided decision affirmed the judgment of the chancery court. *In re Savell*, 856 So.2d 378 (Miss. Ct. App. 2003). Dunbar's motion for rehearing was denied, and we granted Dunbar's petition for writ of certiorari. Finding that the chancellor abused his discretion in concluding that the terms of the contract were unreasonable, we reverse and render the judgments of both the Court of Appeals and the Scott County Chancery Court.

## FACTS

¶2. The following factual background was recited in the Court of Appeals' opinion.

On May 12, 1997, Daisy Pearl Savell executed a durable power of attorney appointing her two daughters, Shirley Renfroe and Marguerite Jordan, as her attorneys-in-fact. Under the terms of the durable power of attorney, Renfroe and Jordan were granted the authority "to do, act, perform or execute any and all instruments of any type or nature that [Savell] could do if [she] were personally present." In addition, the instrument stated, "this power of attorney shall not be affected by the subsequent disability or incapacity of the principal, or lapse of time." The validity of the power of attorney is not in dispute.

On August 7, 1998, Renfroe and Jordan, acting as attorneys-in-fact for Savell, entered into a retainer agreement and contract of employment with the law firm of Holcomb, Dunbar, Connell, Chaffin and Willard, P.A., specifically retaining David C. Dunbar to pursue a personal injury claim against Shady Lawn Nursing Home on Savell's behalf.[1] The employment contract provided that if suit were filed, the attorney's fees would

---

[1]The cause of action concerning Savell's personal injury claim accrued on or about February 18, 1997, when she fractured her hip at Shady Lawn Nursing Home.

2

be forty percent of gross proceeds after the deduction of the law firm's expenses incurred in prosecuting the claim. Dunbar subsequently left the Holcomb, Dunbar law firm and formed DunbarMonroe, PLLC. On April 15, 2001, Renfroe and Jordan, acting as attorneys-in-fact for Savell, executed a second retainer agreement and contract of employment with DunbarMonroe, PLLC, retaining Dunbar and authorizing him to continue with the prosecution of the personal injury claim. The attorney's fees provision of the subsequent contract is identical to that of the former contract.

Dunbar continued to pursue the personal injury claim on Savell's behalf and eventually received an offer to settle the claim. Upon being presented with the settlement offer, Renfroe and Jordan determined that the offer should be accepted.[2] After the power of attorney was executed, but prior to extension of the settlement offer, Savell's mental facilities [sic] diminished rendering her incompetent to administer her affairs.

On May 22, 2001, Dunbar, acting on behalf of Shirley Renfroe, individually and as conservatrix of the Estate of Daisy Pearl Savell, and the DunbarMonroe Law Firm, filed a petition in the Scott County Chancery Court (1) for authority to settle a doubtful claim on behalf of the estate, (2) requesting the approval of the employment contract with Dunbar, and (3) for authority to disburse the settlement proceeds.

On May 25, 2001, the court heard the petition for authority to settle a doubtful claim. After the hearing the chancellor approved settlement of the claim, but declined to approve the employment contract of DunbarMonroe as submitted. The employment contract of DunbarMonroe called for attorney's fees of 40% plus costs. However, the chancellor approved a fee of 33 1/3% plus costs.

On July 28, 2001, DunbarMonroe filed a petition requesting that the chancellor reconsider his prior order awarding attorney's fees of 33 1/3%, and instead grant attorney's fees of 40% as set forth in the contract. The chancellor denied that request on July 18, 2001, saying:

> While Mr. Dunbar requests that the Court honor his original contract with the daughters of the ward, he failed and neglected to have that contract approved by the Court as required by Uniform Chancery Court Rules. Therefore, the contract is not binding on the Court. Instead, the Court has elected to adopt and approve its own contingent fee contract which has been utilized for several years in the Second Chancery Court District. The

---

[2]The settlement reached by the parties was in the amount of $225,000.

Verified Petition for Reconsideration of Attorney's Fees Arising from Settlement of a Doubtful Claim should be denied.

Aggrieved by that denial, DunbarMonroe has appealed, asserting that under the Durable Power of Attorney Act, the chancellor was obligated to approve the employment contract as written.

On December 4, 2002, this Court, on its own motion, remanded this matter to the Chancery Court of Scott County and directed it "to conduct a hearing and to make specific findings of fact and conclusions of law concerning the appropriate amount of attorney's fees in this case. Upon review of the issue of attorney's fees, the chancellor shall provide a foundation for any award or denial of attorney's fees and certify his findings to this Court."

The parties declined to place additional evidence before the chancellor, electing instead to stand on the record as it existed.

The chancellor has now made his findings of fact and conclusions of law as requested, and certified the same to this Court.

856 So. 2d at 379-81.

¶3.     On appeal, a divided Court of Appeals held that the chancellor acted within his discretion in reducing the attorney's fees from 40% to 33 1/3 %. The Court of Appeals held that while the parties were not mandated to do so by law, each voluntarily chose to submit the contract to the chancellor for approval. "By voluntarily submitting this matter to the chancellor for approval, the parties did so for all purposes." ***Id.*** at 381-82 (citing ***Humble Oil & Refining Co. v. Rankin***, 207 Miss. 402, 408, 42 So.2d 414, 417 (1949). The Court of Appeals thus affirmed the chancery court judgment. Presiding Judge Southwick, joined by Chief Judge McMillin and Judges Irving and Chandler, dissented arguing that the contract should be enforced as negotiated. ***Id*** at 383-88.

**DISCUSSION**

4

¶4. This Court's standard of review regarding determinations of a chancellor is well-established.

> This Court will reverse a chancellor only when he is manifestly wrong. *Hans v. Hans*, 482 So.2d 1117, 1119 (Miss.1986); *Duane v. Saltaformaggio*, 455 So.2d 753, 757 (Miss.1984). A chancellor's findings will not be disturbed unless he was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. *Tinnin v. First United Bank of Miss.*, 570 So.2d 1193, 1194 (Miss. 1990); *Bell v. Parker*, 563 So.2d 594, 596-97 (Miss.1990). Where there is substantial evidence to support his findings, this Court is without the authority to disturb his conclusions, although it might have found otherwise as an original matter. *In re Estate of Harris*, 539 So.2d 1040, 1043 (Miss.1989). Additionally, where the chancellor has made no specific findings, we will proceed on the assumption that he resolved all such fact issues in favor of the appellee. *Newsom v. Newsom*, 557 So.2d 511, 514 (Miss.1990). The chancellor's decision must be upheld unless it is found to be contrary to the weight of the evidence or if it is manifestly wrong. *O.J. Stanton & Co. v. Mississippi State Highway Comm'n*, 370 So.2d 909, 911 (Miss.1979).

*In re Estate of Johnson*, 735 So.2d 231, 236 (Miss. 1999). *See also Madison County v. Hopkins*, 857 So.2d 43, 47 (Miss. 2003); *Adoption of C.L.B. v. D.G.B.*, 812 So.2d 980, 985 (Miss. 2002). However, the chancery court's interpretation and application of the law is reviewed under a de novo standard. *Tucker v. Prisock*, 791 So.2d 190, 192 (Miss. 2001); *In re Carney*, 758 So.2d 1017, 1019 (Miss. 2000).

¶5. Dunbar argues that the Court of Appeals failed to consider the controlling constitutional provisions found at U.S. Const. Art. 1, §10, cl. 1, and Miss. Const. Art. 3, §16 (1890), which prohibit the impairment of the obligation of contracts. Dunbar further asserts that the unilateral actions of the chancellor in reducing the amount of attorney's fees set out in the contract of employment ex post facto impaired the obligations of those contracts. Finally, Dunbar contends that because there was neither evidence nor allegations of

fraud, the chancellor was required to enforce the employment contract as written, and the Court of Appeals' opinion was thus in conflict with prior decisions of this Court.

¶6.     The Court of Appeals' opinion stated that because Dunbar voluntarily submitted this matter to the chancellor, he did so for all purposes. *Humble Oil & Ref. Co. v. Rankin*, 207 Miss. at 408. As correctly stated in the Court of Appeals' dissenting opinion in this case, *Humble*, which deals with disputed judicial procedure, does not suggest that what is not normally alterable by a court becomes alterable just because litigation is commenced. Further, the court cited *Johnson v. Hinds County*, 524 So.2d 947 (Miss. 1988), for the proposition that where the parties have voluntarily submitted a matter for resolution to the chancellor, he has the authority to address all matters touching upon the resolution of that issue. The issue discussed in *Johnson* was whether the chancery court had authority to hear and adjudge any non-chancery law claims via pendent jurisdiction. Neither of these cases suggest that the chancellor has the authority to arbitrarily alter terms of a contract when neither party has raised that as an issue and there has been no finding that the contract is in any way unenforceable.

¶7.     This case deals with the Uniform Durable Power of Attorney Act found in Miss. Code Ann. §§ 87-3-101 through 87-3-113.

> A durable power of attorney is a power of attorney by which a principal designates another his attorney in fact in writing and the writing contains the words "This power of attorney shall not be affected by subsequent disability or incapacity of the principal, or lapse of time," or "This power of attorney shall become effective upon the disability or incapacity of the principal, " or similar words showing the intent of the principal that the authority conferred shall be exercisable notwithstanding the principal's subsequent disability of incapacity, and, unless it states a time of termination, notwithstanding the lapse of time since the execution of the instrument.

Miss. Code Ann. § 87-3-105. The fact that incapacity does not affect the power of attorney is reiterated in § 87-3-107:

> All acts done by an attorney in fact pursuant to a durable power of attorney during any period of disability or incapacity of the principal have the same effect and inure to the benefit of and bind the principal and his successors in interest as if the principal were competent and not disabled. Unless the instrument states a time of termination, the power is exercisable notwithstanding the lapse of time since the execution of the instrument.

Miss. Code Ann. § 87-3-107. In the case sub judice, there was a valid durable power of attorney. Renfroe and Jordan executed a valid, enforceable contingency fee contract with Dunbar. Out of an abundance of caution, Dunbar sought approval from the chancery court to settle the claim on behalf of the principal. Renfroe and Jordan did not object to the contingency fee, nor did the chancellor make a finding that the contract was unconscionable, fraudulent or otherwise improper. However, the chancellor determined that the contract required prior approval with the chancery court. Because Dunbar did not get prior approval, which he was not required to do pursuant to a durable power of attorney, the chancellor refused to enforce the contract. The chancellor also failed to analyze the reasonableness of the attorneys' fees by application of the eight factors listed under Miss. R. Prof'l Cond. 1.5, although the chancellor did state later that he thought such analysis would be proper. The chancellor merely reduced the fee from 40 % to 33 1/3 % without explanation. He noted that in his experience, contingency fee contracts often ranged from 20% to 50%; however, the standard fee accepted in his court was always 33-1/3%. Upon reconsideration, the chancellor set out:

> Upon hearing all evidence, both oral and documentary, the Court rendered its opinion that the proposed settlement was just, proper and in the best interest of the ward. As to attorneys fees, the Court was of the opinion that an award of one-third (33%) was appropriate.

7

The chancellor further discussed the procedure and guidelines with regard to guardians and cited Uniform Chancery Court Rule 6.12, which states in part:

> Every petition by a fiduciary or attorney for the allowance of attorney's fees for services rendered. . . . In such cases, the amount allowed as attorney's fees will be fixed by the Chancellor at such sum as will be reasonable compensation for the service rendered and expense incurred *without being bound by any contract made with any unauthorized persons.* If the parties make an agreement for a contingent fee the contract or agreement of the fiduciary with the attorney must be approved by the Chancellor.

Mississippi Uniform Chancery Court Rule 6.12 (emphasis added). However, Rule 6.12 is applicable in probate matters and is inapplicable to a case involving a durable power of attorney as in the case sub judice. The chancellor acknowledged that there was no guardianship, but maintained that Dunbar's request for approval of the settlement also gave the court authority to approve the contingent fee contract. The chancellor concluded:

> While Mr. Dunbar request [sic] that the Court honor his original contract with the daughters of the ward, he failed and neglected to have that contract approved by the Court as required by Uniform Chancery Court Rules. Therefore, the contract is not binding on the Court. Instead, the Court has elected to adopt and approve its own contingent fee contract which has been utilized for several years in the Second Chancery Court District.

¶8. While the case was pending before the Court of Appeals, that court remanded this case to the chancery court for the chancellor to make additional findings of fact and conclusions of law to justify his reduction of the contracted contingency fee. The chancellor, therefore, outlined a historical perspective of the court with regard to insuring that minor, ward or estate settlements are proper, and set out that 40% is considered a standard fee by many attorneys. The chancellor further stated that he was securing the "best deal" for the ward. The chancellor also maintained that Mrs. Savell's incompetence, coupled with the

existence of the power of attorney and the fiduciary relationship it creates, places the contingent fee contract within the confines of Rule 6.12.[3]

> Therefore, without Chancery Court approval, Mr. Dunbar has no contact [sic]. To require Chancery Courts to honor contracts between fiduciaries and attorneys without prior approval of the Court would, in effect, invalidate, annul and rescind a vital part of Rule 6.12 of the Uniform Chancery Court Rules.

¶9.     The practical effect of the chancellor's refusal to enforce the terms of the contract entered into by Renfroe and Jordan was a judicial abrogation of the provisions of Miss. Code Ann. §§ 87-3-101 through 87-3-113. Revoking or invalidating the power of the attorneys-in-fact, Renfroe and Jordan, upon the disability of the principal, defeats the purpose of a durable power of attorney. An attorney in fact under a durable power of attorney is not intended to be encompassed within the "fiduciary" referred to in the Uniform Chancery Court Rules. Miss. Code Ann. § 87-3-109 sets out the relationship of the attorney in fact to a court-appointed fiduciary and says, in part:

> (1) If, following execution of a durable power of attorney, a court of the principal's domicile appoints a conservator, guardian of the estate, or other fiduciary charged with the management of all of the principal's property or all of his property except specified exclusions, the attorney in fact is accountable to the fiduciary as well as to the principal. The fiduciary has the same power to revoke or amend the power of attorney that the principal would have had if he were not disabled or incapacitated.

Miss. Code Ann. § 87-3-109(1). The attorney in fact and the fiduciary are clearly set out as two separate entities. Also, the statute states "[i]f" a court appoints a conservator, etc., thus clearly revealing that such an appointment is not required. Upon the court's own motion, the chancellor appointed Renfroe as guardian

---

[3]Dunbar asserts that Mrs. Savell was not incompetent at the time the contingency fee contract was entered into and that her deposition was taken thereafter in the underlying matter.

at the hearing on May 25, 2001, on the petition for authority to settle a doubtful claim. Further, as stated in Presiding Judge Southwick's dissenting opinion, the comment to the uniform power of attorney act says:

> It is not the purpose of the act to encourage resort to court for a fiduciary appointment that should be largely unnecessary when an alternative regime has been provided via a durable power. UNIFORM DURABLE POWER ATTY ACT, § 3 CMT., 8A U.L.A. 322-23 (1993).

*In re Guardianship of Savell*, 856 So. 2d at 384, (Southwick, P.J., dissenting).

¶10.    Renfroe and Jordan contracted for the employment of Dunbar not once, but twice, both times agreeing to the contingency fee of 40 %. There was never any objection to the contingency fee or claim by Renfroe and Jordan that it was improper. This was not a contract entered into pursuant to a traditional probate matter and this was not a contract within the parameters of Uniform Chancery Court Rule 6.12. The chancellor did not make any finding that the contract or the durable power of attorney was unenforceable or improper for any reason other than that he did not agree with the amount of the fee, which he said was arguably standard.

¶11.    We find that the chancellor's imposition of his "general housekeeping rules" was improper. As so ably stated by Presiding Judge Southwick, "with all respect to the chancellor, he concluded that no contract was valid or reasonable unless it met his norms." The chancellor also failed to uphold the constitutional provision which prohibits the impairment of obligations of contracts. Miss. Const. art. 3, §16 (1890).

## CONCLUSION

¶12.    Finding that the chancellor abused his discretion in arbitrarily decreasing the amount of the contingency fee, we reverse the judgments of both the Court of Appeals and the Scott County Chancery Court, and we render judgment that  the original terms of the contract are declared as enforceable.

10

¶13.   **THE JUDGMENTS OF THE COURT OF APPEALS AND THE SCOTT COUNTY CHANCERY COURT ARE REVERSED AND RENDERED**.

**SMITH, C.J., COBB, P.J., GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.   EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WALLER, P.J., AND DIAZ, J., NOT PARTICIPATING.**