SOUTHWICK, P.J.,
dissenting.
¶ 28. It is with reluctance and respect that I write in disagreement with the majority. Nonetheless, I have a fundamentally different opinion about the authority of the chancellor to impair the obligation of contracts. A perfectly valid contract was entered by the holder of a perfectly valid power of attorney. Yet the chancellor and this Court set that contract aside without any hint of invalidity in the contract or the power. A court does not have such a right.
¶ 29. The majority has ably reviewed the facts, procedural and substantive, and I will not repeat them at any length. The important considerations here are that the person now under a guardianship granted a power of attorney at a time when all parties and judges agree that she was competent to do so. By statute, a person may grant a power of attorney that will continue to be effective even though the grantor later becomes incompetent to manage her affairs. Miss.Code Ann. § 87-3-105 (Rev.1999). Without dispute, this was such a power of attorney, commonly called a “durable power of attorney.” Nonetheless, in a conclusion not endorsed by the majority on appeal, the chancellor rejected the power of such a power once the grantor is no longer competent. Instead, the chancellor held that the initial and overarching error by attorney David Dunbar was in failing to get his contingent fee contract approved by the chancellor before he began his representation:
When Mr. Dunbar agreed to prosecute the cause of action for and on behalf of Mrs. Saveli based on the power of attorney granted Mrs. Saveli to her daughters, he did so with the knowledge that the daughters of Mrs. Saveli stood in fiduciary relationship with her, and that any contingent fee contract must be approved by the Chancellor.... Therefore, without Chancery Court approval, Mr. Dunbar has no contract.
¶ 30. However, in a section of a uniform law on durable powers adopted in this state, a general power of attorney is valid even if the grantor thereafter becomes incompetent, so long as the proper language indicating that it is to continue after incompetence is included. Miss.Code Ann. § 87-3-107 (Rev.1999), 1994 Miss. Laws *384 ch. 336, § 2. The purpose of the act was to make the laws uniform among the states regarding the requirements for and operation of effective durable powers of attorney. Miss.Code Ann. §§ 87-3-103 & 87-3-105 (Rev.1999). Appellate courts, circuit judges, and even chancellors under their broad equitable powers do not have authority to ignore plain language of statutes unless there is a finding of unconstitutionality or other invalidity.
¶ 31. Though the chancellor referred only to contingent fee contracts, his interpretation disallows all contracts executed under the authority of a durable power of attorney after the incompetence of the grantor — in the chancellor’s words, the recipient “has no contract.” Every entity who is considering entering a contract with someone who will be using a durable power of attorney would be required under that analysis to investigate the then-competence of the grantor of the power. The durable power of attorney — the instrument itself and the statute that authorizes it — is useless.
¶ 32. The chancellor’s holding is so astonishing that in order to be fair, I examine it as carefully as I can for its basis. First, the chancellor concludes that the holder of the power is a fiduciary to the grantor. Then he interprets a chancery court rule to require that every litigation attorney for a fiduciary petition the court to approve the contract of employment. Unif. Ch. Ct. R. 6.12. Other sections of the same rules require that the court approve an allowance for support of the incompetent, the making of loans or investments, the compromising of claims, and the paying of a commission to the fiduciary. Unif. Ch. Ct. R. 6.08-6.11. The chancellor’s holding in this case cancels the durable power of attorney for any of these stated actions, and all must be cleared through the chancellor. From these principles, the chancellor concluded that the contingent fee contract had to be approved even though there were no guardianship proceedings at the time that the contract was executed by the attorney-in-fact. I will explain several sources of the disagreement.
¶ 33. One provision of the uniform act affirms that after a guardianship is created, the guardian may either continue or cancel a durable power of attorney:
If, following execution of a durable power of attorney, a court of the principal’s domicile appoints a conservator, guardian of the estate, or other fiduciary charged with the management of all of the principal’s property or all of his property except specified exclusions, the attorney in fact is accountable to the fiduciary as well as to the principal. The fiduciary has the same power to revoke or amend the power of attorney that the principal would have had if he were not disabled or incapacitated.
Miss.Code Ann. § 87-3-109(1) (Rev.1999). The official comment to the uniform act states that “agencies under durable powers and guardians or conservators may coexist. It is not the purpose of the act to encourage resort to court for a fiduciary appointment that should be largely unnecessary when an alternative regime has been provided via a durable power.” Unif. DURABLE POWER AtTY ACT, § 3 CHlt., 8A U.L.A. 322-23 (1993). Quite simply, a guardianship is usually not needed if a durable power of attorney was executed prior to the incompetence of the grantor.
¶ 34. The just-quoted provision removes ambiguity regarding the respective authority of guardians and attomeys-in-fact under a durable power, since “acts done by an attorney in fact pursuant to a durable power of attorney during any period of disability or incapacity of the principal have the same effect and inure to the *385 benefit of and bind the principal and his successors in interest as if the principal were competent and not disabled.” Miss. Code Ann. § 87-3-107 (Rev.1999). If a guardian is named in court proceedings, that creates a relationship with the holder of the power that must be addressed. Though the court-named fiduciary may cancel the power, nothing suggests that prior actions of the holder of the durable power of attorney are canceled. That would trench on the validity of contracts that were properly executed prior to the naming of the guardian. Section 87-3-107 specifically says those acts are binding just as if the grantor of the power were competent. They do not later become unbinding just because someone decided to open a guardianship.
¶ 35. What the chancellor did not accept, but which I find to be undeniable, is that laws of this state permit the affairs of an incompetent individual to be managed by the holder of a durable power of attorney or by a guardianship, and that either is acceptable. Someone concerned about the actions of the holder of the power may bring suit to create a guardianship and allege that the power is being abused. No such complaint has been brought here. The only argued invalidity of the contract between the holder of the power and the litigation attorney is the one asserted by the chancellor, namely, that the court must approve it. With respect, I find that to be clear error.
¶ 36. Thus a valid contract of representation with all the terms there set out came into being. Among the terms was a contingency fee of forty percent. What is left for our consideration is whether the chancellor once he does gain jurisdiction over the matter can rewrite the contract because it does not conform with the contingency fee contracts that the chancellor would have authorized had the chancellor been involved since the beginning of the suit.
¶ 37. In order to determine the chancellor’s authority, it is necessary to start with an understanding of what the parties presented to him. As set out in the record, prior to any chancery proceedings, suit was brought in a different county’s circuit court for injuries Mrs. Saveli was said to have suffered in a nursing home. In time, an offer of settlement was made, but the defendants wanted a release executed by a properly appointed guardian. The holder of a durable power of attorney may bring litigation and settle it, in the same manner as could the grantor herself. No chancellor’s authorization is needed. The majority here acknowledges that this settlement did not have to be presented to the chancellor for review. What interests of the defendants were being protected by the insistence on a guardianship can be conjectured but are unimportant to our decision. What is relevant is that with the tort litigation all but over, the chancery suit was commenced.
¶ 38. The chancellor approved everything concerning the settlement except for the percentage to be given the attorney under the already executed and valid contingency fee contract. In his original decree, the chancellor reduced the forty percent contingency to one-third, “pursuant to the rules of this court,” and found that the lower amount was reasonable. He gave no other explanation and never found that forty percent was unreasonable. After our remand, the chancellor made findings that included an “historical” perspective. In that section of his findings, it was noted that attorneys’ contingency fee contracts in his experience have ranged from twenty percent to fifty percent of the ultimate recovery. To set a standard for his court, the chancellor had determined that all con *386 tracts for representing of wards must be for one-third of the recovery in litigation.
¶ 39. I find several defects in the reasoning. First, regardless of what a chancellor has the authority to require before approving contingency fee contracts as an initial matter, that does not control in a situation in which a valid contingency fee contract already exists prior to the matter being brought to him. Our case is no different on this point than if Mrs. Saveli, the person who granted the power of attorney, had herself executed the contingency fee contract at a time when she was still competent to manage her own affairs. The contract is valid, but the chancellor altered it all the same.
¶ 40. Once a valid contingency fee contract is entered, I find that the chancellor cannot impose his general housekeeping rules for what he would like to have in such contracts. Instead, the chancellor must find an invalidity or else he has impaired vested contract rights. Many kinds of contracts can exist that were validly executed by the individual prior to her incompetence: contracts for the purchase or sale of real property; promissory notes as borrower or lender; investments of other kinds. Many of these, though valid, may be less than optimal in their terms. Contracts on the same terms may be executed with a durable power of attorney and “have the same effect ... and bind the principal and his successors in interest as if the principal were competent and not disabled.” Miss.Code Ann. § 87-3-107. Once a guardianship is begun, the court may not rewrite earlier valid contracts of the ward or of the attorney-in-fact to suit the chancellor’s preferences.
¶ 41. The guardian here, after being appointed in order to do so, filed a complaint to settle the claim. The complaint sought to have approval of the contract that she had two years earlier entered with the litigation attorney: she “prays that this Court will find the contract of employment [entered with the law firm] to be valid and reasonable.... ” This language does not override all that I have already noted about the effectiveness of a durable power of attorney. The majority here is in effect saying that presenting the matter to the chancellor was a waiver of what otherwise would have been the right to proceed under the contract. Instead, I find that the presentation left the chancellor able to address only whether the contract was invalid because of the sorts of exceptional matters that can always be raised to challenge the authority of an agent. I now address what may be challenged.
¶ 42. An attorney-in-fact as do other agents has a duty to the principal to deal fairly and in good faith. This has been called “a duty to use the degree of diligence and care which a reasonably prudent person would ordinarily exercise in the transaction of his own business.... ” Lowery v. Guaranty Bank & Trust Co., 592 So.2d 79, 83 (Miss.1991). Fraud, acting despite conflicts of interests or beyond the scope of the power, and other improper conduct may invalidate what the holder of a power of attorney has done. Id. If another person contracting with the attorney-in-fact should have been aware of the improprieties, then the contract is invalid. Someone contracting with a known agent must ascertain that the contract being executed is within the power of the agent. Consumers Credit Corp. of Miss. v. Swilley, 243 Miss. 838, 849, 138 So.2d 885, 889 (1962). I find that these considerations are the only ones that the chancellor was properly able to review.
¶ 43. The chancellor in invalidating this contract went beyond his authority, whether viewed in terms of statutes on powers of attorney and on guardianships, of the *387 pleadings that were filed, or of the cited chancery court rules. Perhaps most importantly, he failed to uphold the constitutional provision prohibiting the impairment of obligation of contracts. Miss. Const. Art. 3, § 16 (1890).
¶44. In sum, there were no findings that would justify rejecting the contract. The chancellor acknowledged that forty percent contingency fees are often contracted. Nonetheless, an arbitrary rule was applied that in his court, forty percent is always unreasonable. We are not faced with whether a chancellor may properly establish one unalterable fee for all contingency contracts that are executed after a guardian is named. Preexisting valid contracts for employment of litigation attorneys must be accepted — whether the contract was executed by the principal or by her agent, whether executed by an agent before or after the incompetency of the principal under a durable power of attorney, and whether or not it was for more or less than the preferred percentage.
¶ 45. To counter these problems, the majority cites inapplicable general principles. First, the Court notes the supplemental findings made by the chancellor. The Court concludes that “the chancellor’s actions were supported by substantial credible evidence” consistent with his findings. I have already discussed those findings. The chancellor did not find that the contract was a violation of an agent’s obligations of good faith management of her principal’s affairs. Instead, the operative finding was that this contract provided for more than the chancellor’s per se limit. That is explicitly the only reason that the chancellor ruled as he did. That is not enough.
¶ 46. The majority also stated that “by voluntarily submitting this matter to the chancellor for approval, the parties did so for all purposes. Humble Oil & Refining Co. v. Rankin, 207 Miss. 402, 408, 42 So.2d 414, 417 (1949).” With respect, the cited case holds only that when an interpleader action was brought, it was proper for the trial court also to grant other relief even though strictly speaking, “the defendants can go no further than to show that the complainant is not entitled to maintain his bill and that the defendants cannot ask for any specific relief against the complainant.” Id. Thus a cross-bill was permitted. In no way does that case suggest that what is not normally alterable by a court becomes alterable just because litigation is commenced. Disputed judicial procedure was addressed in the Supreme Court’s Humble precedent of 1949. That case is not relevant to the disputed judicial right addressed in this Court’s bold precedent of today.
¶ 47. The majority similarly argues that if “parties have voluntarily submitted to the chancellor a matter for his resolution, he has the authority to address all matters touching upon the resolution of that issue, Johnson v. Hinds County, 524 So.2d 947, 953 (Miss.1988).” Of course. That opinion noted that “if any aspect of the case lay within its subject matter jurisdiction, the chancery court had authority to hear and adjudge any non-chancery pure law claims via pendent jurisdiction.” Id. My disagreement has nothing to do with whether the chancellor went beyond the possibly limited version of what initial pleadings presented as the cause of action. The validity of this contract of representation— its consistency with the obligations of the holder of a power of attorney — was presented to the chancellor. Where error occurred, with all respect to the chancellor, was when he concluded that no contract was valid or reasonable unless it met his norms.
¶ 48. A contract for representation in a lawsuit can validly be entered by an attor *388 ney-in-fact after the principal becomes incompetent, if the power is a durable one and if the terms of that contract are consistent with good faith and reasonable diligence. No pre-approval or post-approval by a chancellor is required. Should a chancellor later become involved, all the chancellor may do is determine whether the contract fits within these general rules. The court may not in addition apply his personal view of what should be in such contracts. A valid contract may not be impaired.
¶ 49. I would order the contract enforced as it was initially negotiated.
McMILLIN, C.J., IRVING AND CHANDLER, JJ., JOIN THIS SEPARATE WRITTEN OPINION.