SOUTHWICK, P.J.,
for the Court:
¶ 1. Tommy Lee Davis filed for injunc-tive relief to. remove a materialman’s lien from the records of the Prentiss County Chancery Clerk and to cancel a stop notice. Both documents had been filed by Harold Cummings, with whom Davis had formed a corporation to build and operate a restaurant in Prentiss County. The chancery court granted a temporary restraining order that had the effect of canceling the lien and stop notice. The chancellor found that unless the TRO was entered, the appellees would suffer immediate and irreparable injury in that they would not be able to proceed with completion of the restaurant. A permanent injunction was later entered. Cummings appeals, arguing that the chancery court did not have jurisdiction and that certain evidence was improperly excluded at a hearing on the basis of the attorney client privilege. A third issue involving a permanent stay has been resolved adverse to Cummings by an earlier supreme court order in this appeal. We find no reversible error as to the remaining two issues and therefore affirm.
FACTS
¶ 2. In the fall of 1996, Cummings and Davis discussed a venture in which they would construct a restaurant on a piece of property which Davis owned in Prentiss County. Cane Creek, Inc. was formed for the purpose of constructing and apparently then operating the restaurant. Davis conveyed 2.89 acres of land located on a highway to the corporation. Cummings contends he was initially to receive 30% of the business and an additional 20% upon completion. He would serve as restaurant manager and receive a salary equal to 50% of the profits. Davis generally agrees but maintains that Cummings was to receive no compensation until the business was operating at a profit.
¶ 3. Cane Creek, Inc. secured a $230,000 line of credit from Farmers and Merchants Bank of Booneville. Davis and Cummings personally guaranteed the loan. The 2.89 acres on which the restaurant was to be constructed served as security for the loan. Permanent financing was to be obtained through the Northeast Mississippi Planning and Development District.
¶ 4. Construction began in late April 1997. Soon, Davis and Cummings began experiencing problems with the contractor who eventually walked off the job, leaving the building 90% complete. All of the original loan proceeds had been spent and there still remained bills to be paid. The manager of Farmers and Merchants *1057 agreed with Davis and Cummings to renew the note upon the payment of the $8,700 in interest due. This caused some disagreement between Davis and Cummings, because Cummings refused to put up any collateral or to pay any of the interest due. According to Davis, Cummings told him to “get another partner.” Cummings asked to be taken off the original note as a personal guarantor and Davis complied. Cummings claims that he was forced out of the business because he was unable to take advantage of an offer to buy or sell.
¶ 5. Davis alone obtained another line of credit through Farmers and Merchants for $70,020 on January 16, 1998. As security, he pledged two acres of land located north of the restaurant property. He anticipated using the money to finish the restaurant building, to pay laborers and materi-almen, and to have operating capital with which to open the restaurant.
¶ 6. Less than a month later, on February 3, 1998, Cummings filed a notice that he claimed a labor and materialman’s lien and also filed a stop notice in the Prentiss County Chancery Clerk’s office. Cummings filed the lien against both the 2.89 acres of restaurant property and the two acres which Davis had pledged to secure the second line of credit. Cummings later executed a release of the two acres. According to Cummings, he was owed compensation for the 2,000 hours, or over one year, of work that he had done on the project. He calculated the amount due him to be $98,309.14, plus costs of recordation, collection and attorney’s fees.
¶ 7. Several days later, Davis filed for a temporary restraining order and other in-junctive relief. Davis claimed that because of the notices, Farmers and Merchants refused to allow him to draw any more money from the $70,000 line of credit. Moreover, Northeast Mississippi Planning and Development indicated they would not grant permanent financing while the notices were on file. Davis claimed that if the lien and stop notice were not removed, he would suffer immediate and irreparable injury because he would be unable to complete the restaurant.
¶ 8. Following a hearing, the chancellor granted the temporary restraining order on February 13, 1998. After another hearing, a permanent injunction was entered on April 16, 1998. The chancellor held that Cummings was enjoined from filing any further liens of any type against Davis and from any further interference with Davis’s pursuit of the restaurant business. The chancellor went on to hold that the order did not prohibit Cummings from seeking relief in the circuit court in the form of a quantum meruit action or other claim for compensation.
DISCUSSION

I. Jurisdiction

¶ 9. In the judgment granting a permanent injunction, the chancellor enjoined Cummings “from filing any further liens of any type against the Plaintiffs or any of their property, or funds.... ” Cummings argues that through this order, the chancery court invaded the province of the circuit court, which he claims has sole authority to rule upon the validity of mate-rialman’s liens. That alleged exclusivity arises from a statute providing that suits to secure the benefit of such a lien are to be filed in circuit court. Miss.Code Ann. § 85-7-141 (Rev.1991). That the circuit court is the proper situs for suits to enforce the lien does not mean that a chancellor has no jurisdiction to restrain a private person’s efforts to hold himself out as possessing such a lien. There was no pending action in circuit court over the lien and thus no clash of jurisdiction.
¶ 10. In one rather dated case, the supreme court held that a chancellor should enter an injunction blocking the enforcement of a materialman’s lien, when an earlier suit under the materialman’s lien statute had failed to state a cause of action and consequently the judgment was void. Smith v. Gardener Hardware Co., *1058 83 Miss. 654, 654-56, 36 So. 9, 10 (1904). Without analyzing whether this is still a correct view of the role of a chancery court, we do accept that a chancellor has the right to examine whether a recorded materialman’s lien not then the subject of a circuit court enforcement action is void and of no effect, and that the filing of such liens should be enjoined.
¶ 11. Since we find that the chancellor had jurisdiction, we turn to whether the injunctions were proper. The stop notice statute enables an unpaid subcontractor, materialman, or laborer to freeze funds due the prime contractor. Miss. Code Ann. § 85-7-181 (Rev.1991).
When any contractor does not pay any person who has furnished material or labor at the construction project, then that person may provide the owner with written notice of the contractor’s failure to pay. Upon the giving of such notice, the amount that may be due the prime contractor will be frozen in the hands of the owner, or essentially placed in escrow, for full or partial payment to the subcontractor.
William L. Smith, Boswell Stevens Hazard, Comment, Mississippi Law Governing Private Construction Contracts: Some Problems And Proposals, 47 Miss. L.J. 437, 448-49 (1975).
¶ 12. Cummings is not a subcontractor, materialman or laborer, just as Tommy Davis and Cane Creek, Inc. were not the general contractors on the project. Both Davis and Cummings testified that the general contractor was a Mr. Owens who left the project 90% complete. There is no evidence that Cummings was ever to be paid by the contractor, against whom a stop notice operates.
¶ 13. We also assume that the issue of a stop notice is moot. Any funds that initially were frozen have likely been expended by now. Regardless, Cummings does not seriously challenge the lifting of the stop notice. He rather contends that lifting it was sufficient to allow completion and financing of the restaurant to go forward. He takes issue with the lifting of the mate-rialman’s lien.
¶ 14. Whether Cummings is within the class of persons entitled to this lien can be reviewed first by examining the statute. It allows “architects, engineers, surveyors, laborers, and materialmen and/or contractors” to secure a lien against the owner’s property for services rendered and improvements constructed. Miss.Code Ann. § 85-7-131 (Rev.1991). Cummings claims that services he performed for the corporation place him within the ambit of the statute. These services include making telephone calls, traveling in search of restaurant equipment, and generally supervising construction of the restaurant. He performed these activities as an owner of the business, not as an architect, engineer, surveyor, laborer, materialman or contractor.
¶ 15. Cummings was an incorporator of Cane Creek, Inc., who owned the property and secured the loan for construction. There is some dispute about whether his ownership was fully recognized. Cummings claims that he owned 30% of the corporation, yet 30 shares of stock were issued to Cathy Davis instead of to him. Tommy Davis testified that Cummings was to receive Mrs. Davis’s shares once the business became operational. At the very least, Cummings was an officer of the corporation and had an agreement to be an owner. He signed the promissory note for $230,000 as vice-president of the corporation. Other documents, including a corporate resolution, bear Cummings’s signature as secretary/treasurer of Cane Creek, Inc.
¶ 16. Regardless of which status — part owner or officer — better explains who Cummings was, who he was not is clear. He was not a general contractor or materi-alman. This is not to say that an owner of a corporation can not also serve as its general contractor, or even be an architect or some other lien-earning individual. Associated Dealers Supply, Inc. v. Mississip *1059 pi Roofing Supply, Inc., 589 So.2d 1245, 1247 (Miss.1991). But there is no evidence that this owner was any of those things. A general contractor is “the party to a building contract who is charged with the total construction and who enters into subcontracts for such work as electrical, plumbing and the like.” Id. Cummings testified that Mr. Owens served as the general contractor on the project. Cummings himself did not provide any building materials. Most importantly, he acknowledged that there was no agreement for the corporation to pay him any money until the restaurant had opened for business.
¶ 17. In the absence of an agreement, there is no obligation on the part of a corporation to pay a part owner for doing work in furtherance of the interests of the corporation. Even if Cummings ultimately proves entitlement to compensation because of quantum meruit or some other theory, that avails him nothing in this suit in which he seeks recognition of a materialman’s hen. That he might be entitled to be paid does not per se entitle him to a lien.
¶ 18. The chancellor was correct to lift the materialman’s lien and cancel the stop notice.

II. Attorney client privilege

¶ 19. Cummings argues that reversible error occurred when the testimony of George Via, attorney for Cane Creek, Inc., was excluded on the basis that it was privileged. He further objects to the fact that several corporate documents, including the shareholders’ agreement and notice of the initial organizational meeting, were excluded from evidence because of privilege.
¶20. There is authority that the corporate “attorney-client privilege rests with the corporation’s management and is normally exercised by its officers and directors.” Commodity Futures Trading Comm’n v. Weintraub, 471 U.S. 348, 349, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). That is not really our issue, however. The communications concern the creation of the corporation, including Cummings and Davis’s statements and understandings relayed to the attorney regarding the rights and obligations of each. Whether communications among parties who engage a single attorney to advise them with respect to forming a business entity are privileged is doubtful. In such a situation, the parties are usually considered co-clients and no privilege is thought to exist. Roland J. Santoni, Application Of The Attorney-Client Privilege To Disputes Between Owners And Managers Of Closely-Held Entities, 31 Creighton L.Rev.849, 855 (1998). To the extent that the issue is what was agreed during the formation of the corporation, there is no privilege.
¶ 21. Though we do not agree with the chancellor that there was a privilege here, we find no reversible error. Cummings has failed to demonstrate the relevance of the privileged testimony or documents. This appeal concerns whether Cummings was entitled to a materialman’s lien or a stop notice. What his agreement with Davis might have been, and whether that agreement was communicated to their attorney, are of no importance unless the attorney would have revealed evidence that Cummings really was an architect, engineer, surveyor, laborer, materialman or contractor. Even in the absence of a proffer, Cummings must make a reasonable effort to prove the relevance of the evidence. He has failed to do so.
¶22. Next, Cummings contends that the disclosure of an otherwise privileged communication to a third person eliminates the confidentiality on which the privilege rests. He points to the involvement of Tommy Yanstory, an accountant, in preparing personal financial statements for submission to the planning and development commission. Mr. Vanstory also reviewed a shareholder’s agreement which Cummings claims should have been allowed into evidence.
*1060 ¶ 23. The relevant privilege applies to communications made by the client to the attorney or to the attorney’s representative. “A ‘representative of the lawyer’ is one employed by the lawyer to assist the lawyer in the rendition of professional legal services.” M.R.E. 502(a)(4). The accountant can claim the attorney-client privilege “where he is employed to assist the lawyer in the rendition of professional legal services.... Careful distinctions are required. Where the accountant examines the client’s books and prepares a report for the lawyer, the report is privileged but the books are not. The mere delivery of pre-existing accounting records to the lawyer cannot create a privilege.” Wright AND GRAHAM, FEDERAL PRACTICE AND PROCEDURE, § 5427 (1980).
¶ 24. Any materials prepared or reviewed by Mr. Vanstory in order to assist Mr. Via do not lose their privilege. Again, though, Cummings has not demonstrated the relevance of these documents.
¶ 25. Finally, Cummings correctly asserts that the Mississippi Supreme Court has not recognized the privilege in those cases where the attorney is merely a scrivener. Haynes v. Anderson, 597 So.2d 615, 621 (Miss.1992). When the terms of a contract have been agreed upon between the parties, and an attorney is afterwards employed as a scrivener merely to reduce the contract to writing, and no inquiry is made of him as to its legal effect, communications made to him for that purpose will not be regarded as privileged. King v. State, 580 So.2d 1182, 1190 (Miss.1991). Cummings has presented no evidence that Mr. Via did not render legal advice and was only a scrivener.

III. Permanent stay with partial super-sedeas

¶26. Cummings requests that a permanent stay with partial supersedeas be issued that would prevent Davis from raising certain defenses in the circuit court suit that he intends to file. The supreme court entered an order on August 11, 1998, denying the motion. If such a suit has been or is later brought, the trial court can address such questions without appellate court prejudgment.
¶ 27. THE JUDGMENT OF THE PRENTISS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.