CHANDLER, J.,
for the Court.
¶ 1. This appeal arises from an October 28, 2002 order of the Adams County Circuit Court denying a motion by Noble House, Inc. and Francis J. Ransom, d/b/a Ransom Construction Company, Inc., to alter or amend a judgment entered on October 4, 2002. At issue is a so-called “agreed judgment of dismissal” devised by Noble House and Ransom, which, without notice, unilaterally precluded the subcontractor, W & W Plumbing & Heating, Inc., from sharing in funds interpled with the court pursuant to Rule 22 of the Mississippi Rules of Civil Procedure. Noble House and Ransom challenge the circuit judge’s hand-written provision in the October 28 order for W & W Plumbing, which had been named as an interpleader defendant when litigation began in 1997. Finding that the circuit judge did not abuse his discretion in refusing to grant the motion to alter or amend the judgment, we affirm the decision of the court below.
FACTS
¶ 2. On April 27, 1994, Francis J. Ransom, d/b/a Ransom Construction Company, entered into a contract with Noble House, Inc. and the Adams County Board of Supervisors for the construction of a multifamily, low-income housing project in Natchez, Mississippi, under the aegis of the Home Investment Partnership Program of the United States Department of Housing and Urban Development. Under the terms of the contract, construction of the apartments was scheduled for completion within 240 days of the contract date. However, because of various collateral legal proceedings not related to the case sub judice, work was stopped between November 1994 and August 1995. Consequently, the apartments were not ready for occupancy until November 1996.
¶ 3. As a result of the work stoppage, the original subcontractor Ransom had hired to install the plumbing, heating and air conditioning systems refused to perform. Ransom substituted W & W Plumbing & Heating as the alternative subcontractor, which bid $55,964.32 to correct work previously done and to complete the project. Invoices submitted by W & W Plumbing to Ransom indicate that the contractor paid the first draft of $30,589.05 on September 3, 1996. Two subsequent drafts of $14,287.51, due on October 1, 1996, and $10,817.76, due on December 1, 1996, were not paid.
¶ 4. During the course of construction, Noble House made periodic installment payments to Ransom. On October 16, 1996, with the apartments nearly ready for occupancy, Noble House notified Ransom in writing that its contract was terminated because of Ransom’s alleged failure to complete the limited work remaining in a timely and workman-like manner. Noble House thus withheld its final payment of $72,356 to the contractor. Ransom, in turn, did not pay W & W Plumbing the final $25,105.27 it was owed for completing the plumbing, heating and air conditioning work.[1]
¶ 5. On February 1, 1997, Noble House filed a complaint in the Adams County Circuit Court against Ransom and W & W Plumbing. Noble House charged that Ransom had breached its contract by failing to complete the project in a timely and workman-like manner. Noble House averred that it had not made the final payment of $72,356 to Ransom because of economic losses caused by the construction delays. Noble House further stated in its complaint that Ransom owed the plumbing *380 contractor $25,105.27. Therefore, Noble House sought to interplead a total of $72,856 and named W & W Plumbing as an interpleader defendant for purposes of the escrowed funds.
¶ 6. W & W Plumbing filed its response to the complaint on February 26, 1997. Ransom filed a response and counter-claim against Noble House on March 13, 1997, seeking recovery for additional project expenses incurred by the stop work order. Ransom further alleged that the original contract was rescinded by the stop work order and never revived, either orally or in writing.
¶ 7. W & W Plumbing filed a motion for partial summary judgment on March 27, 1997. W & W Plumbing asserted that it was undisputed that it had properly completed the work as agreed and was entitled to payment in the amount of $81,877.29, which included accrued interest. Since the pleadings filed by Noble House and Ransom agreed that W & W Plumbing was entitled to $25,105.27 due and payable from December 1, 1996, the subcontractor asked the court to declare that there was no issue of material fact and to pay the amount due from the interpled funds. Noble House responded that proof of the amount due had not been placed in evidence. Accordingly, the circuit judge found that granting relief would be premature and denied the motion on April 30, 1997.
¶ 8. Ransom amended its counterclaim against Noble House on July 8,1998, seeking payment of the money owed to W & W Plumbing, the $72,356 allegedly still owed for completing the construction, and further, compensation for business lost because of bonding problems arising from the litigation. Noble House likewise amended its complaint against Ransom, joining Cumberland Surety & Performance Co., Inc., which had provided Ransom’s performance bond.
¶ 9. On June 1, 2000, W & W Plumbing filed an amended response to the initial complaint. Contrary to all parties’ earlier position that the plumbing company was a subcontractor, W & W Plumbing asserted that because time had been of the essence in completing the project, it had acted as an independent contractor for both Ransom and Noble House. W & W Plumbing alleged that it had reported directly to Noble House, which had supervised the work and guaranteed payment. Because of the disputes and delays encountered during the course of construction, W & W Plumbing further claimed that it had refused to enter into a contract and all work had been done on an hourly basis. Noble House denied the allegations made in the amended response, subsequently filing a motion for partial summary judgment in August 17, 2000, seeking dismissal of any claims W & W Plumbing might have against it or the interpled funds.
¶ 10. Ransom then filed its motion for summary judgment on October 4, 2000. Ransom, for the first time, asserted that the work performed by W & W Plumbing had been done pursuant to an open account arrangement. Ransom therefore argued that any claim W & W Plumbing might have against it was time-barred by the three-year statute of limitations on open accounts prescribed by Mississippi Code Annotated Section 15-1-29 (Rev. 2003).
¶ 11. Noble House’s motion for summary judgment was denied on October 23, 2000. The circuit judge found that no independent claim by W & W Plumbing existed against Noble House which would be a proper subject for summary judgment. The judge expressly refused to rule on the validity or invalidity of any claims against the interpled funds, stating that the issue should be bifurcated and held in abeyance until the claims between Ransom and Noble House were resolved. In his *381 November 2, 2000 order, the circuit judge reiterated that W & W Plumbing had basis for a claim against Noble House, and had not asserted any counterclaims against the owner or cross-claims against Ransom and remained only an interpleader defendant, with claims solely to the interpled funds.
¶ 12. In its amended response, W & W Plumbing noted that Noble House had failed to deposit the full $72,356 it sought to interplead in the original complaint. Ransom subsequently filed a motion to require Noble House to deposit the remaining $51,167.32 in the escrow account, which was denied by the circuit judge on January 31, 2002. Thus, the full amount was never deposited with the court.
¶ 13. Partial summary judgment for W & W Plumbing was granted on August 13, 2002. The circuit judge found that the work done by W & W Plumbing was specifically requested by both Noble House and Ransom and that it was completed according to the specifications of both parties. The amount claimed by W & W Plumbing, the judge determined, was undisputed. The circuit judge further ruled that while W & W Plumbing could bring no claims against Noble House, it was entitled to payment from the funds inter-pled with the court.
¶ 14. On October 3, 2002, Noble House and Ransom advised the circuit judge that they had reached a settlement whereby the parties would dismiss all claims against each other. The order presented to the court directed the circuit clerk to divide the interpled funds evenly between Noble House and Ransom. The circuit court entered the agreed judgment of dismissal on October 4, 2002, after amending it to provide for payment of funds to Noble House and Ransom “[ajfter first paying the sum of $25,105.27 to W & W Plumbing and Heating, Inc.”
¶ 15. Noble House and Ransom filed their motion to alter or amend the agreed judgment on October 24, 2002. They reasserted their claim that W & W Plumbing was not entitled to the funds originally interpled on its behalf. Moreover, they argued that the circuit judge’s orders exceeded his authority and contravened their intentions.
¶ 16. A hearing was held to show cause why the funds should not be paid out as ordered by the court. As a result of those proceedings, the circuit judge entered an order on October 28, 2002, finding that the October 4, 2002 agreed judgment of dismissal should stand, as amended by the judge, and denying the motion to alter or amend. In the order, the circuit judge further found that W & W Plumbing had been made a party defendant in an inter-pleader action initiated by Noble House, recognized by the court as an interpleader defendant and found to have a claim solely to the interpled funds. He emphasized that the agreed judgment of dismissal made no mention of W & W Plumbing as an interpleader defendant and that the attorney for W & W Plumbing neither had agreed to the disposition of funds set forth in the judgment of dismissal nor been informed that it would be presented to the court. The interpleader funds were ordered to remain on deposit with the circuit clerk pending this appeal.
LAW AND ANALYSIS
I. WHETHER THE CIRCUIT COURT ABUSED ITS DISCRETION IN ENTERING ORDERS GRANTING PARTIAL SUMMARY JUDGMENT TO W & W PLUMBING, AMENDING AND ENTERING THE AGREED ORDER OF DISMISSAL AND DENYING THE RULE 60 MOTION FILED BY NOBLE HOUSE AND RANSOM
A. The Order Granting Partial Summary Judgment
¶ 17. The circuit court entered an order on August 13, 2002, granting partial *382 summary judgment for W & W Plumbing. As part of their first assignment of error, Noble House and Ransom mention in passing that the circuit judge erred in granting partial summary judgment for W & W Plumbing. However, as discussed below, the circuit court correctly found that although W & W Plumbing was not entitled to bring a claim directly against Noble House, the property owner and stakeholder in this interpleader action, it was entitled to payment from the funds interpled with the court.
B. The Agreed Order of Dismissal and Rule 60(b)(6) Motion
¶ 18. On October 3, 2002, the circuit judge entered an agreed judgment of dismissal, presented to the court by Noble House and Ransom. Noble House and Ransom advised the judge that they had reached a settlement in the case, sought the dismissal of all claims and counterclaims with prejudice, and would split the interpled funds evenly between them. W & W Plumbing was neither advised by the other parties of the agreement between them nor that it had been unilaterally cut off from the funds which had been inter-pled, ostensibly on its behalf, nearly six years earlier. The circuit judge, therefore, modified the final paragraph of the order, which originally provided that the inter-pled funds and all interest which had accrued thereon, be divided evenly between Noble House and Ransom, by inserting a handwritten provision that such division take place only “after first paying the sum of $25,105.27 to W & W Plumbing and Heating, Inc.”
¶ 19. Noble House and Ransom filed a motion to alter or amend the agreed judgment of dismissal on October 24, 2002, contending that the circuit judge abused his discretion in amending the judgment because W & W Plumbing was not entitled to the interpled funds. They asserted that because the subcontractor had failed to make a valid claim to the funds by filing a counterclaim against Noble House or a cross-claim against Ransom or by timely filing a stop notice pursuant to Mississippi Code Annotated section 85-7-181 (Rev. 1999) and had no contractual relationship with Noble House, it was precluded from recovery. Accordingly, Noble House and Ransom argued that the circuit judge’s modification of their agreed order completely abrogated the terms and conditions to which the two parties had agreed.[2]
¶ 20. At the show cause hearing, the circuit judge explained:
Essentially what the Court is ruling is that once the funds were interpled into court, Noble House and Ransom had every right to settle all their claims, but they had no right to unilaterally provide for the disposition of the interpled funds, particularly given the rulings previously made by the Court and W.W.’s clear status as an interpled defendant to these funds.
The circuit judge further reminded the parties that “Noble House and Ransom had every right to settle their claims and competing interests between themselves, but you cannot be an Indian giver with interpled funds.”
¶ 21. Although the motion was filed by Noble House and Ransom pursuant to Rules 59 and 60 of the Mississippi Rules of Civil Procedure, it must be treated as a Rule 60(b)(6) motion because it was not filed within ten days of the final judgment as required by Rule 59. Fultz v. Doss, 507 So.2d 891, 893 (Miss.1987). The Mississippi Supreme Court has stated that *383 “[r]elief under Rule 60(b)(6) is reserved for extraordinary and compelling circumstances,” and further, that the Rule is a “grand reservoir of equitable power to do justice in a particular case.” M.A.S. v. Mississippi Dept. of Human Services, 842 So.2d 527, 530 (¶ 12) (Miss.2003), quoting Briney v. United States Fid. & Guar. Co., 714 So.2d 962, 966 (Miss.1998). In the case sub judice, the circuit judge, as he explained at the show cause hearing, acted to correct an extraordinary situation.
¶22. “Rule 60(b) is not an escape hatch for litigants who had procedural opportunities afforded under other rules and who without cause failed to pursue those procedural remedies.” City of Jackson v. Jackson Oaks Ltd. P’ship, 792 So.2d 983, 986 (Miss.2001). The case was initiated by Noble House, albeit represented by different counsel and overseen by a different judge, as an interpleader action pursuant to Rule 22 of the Mississippi Rules of Civil Procedure. Throughout six years of litigation, W & W Plumbing remained as a defendant solely for purposes of the interpleader funds, the total amount of which was never paid into the court by Noble House. Neither the contract issues between Noble House and Ransom nor the interpleader action were ever pursued to the extent of resolution. Both Noble House and Ransom failed to pursue the procedural remedies initiated by Noble House to resolve the differences between them. “Further, Rule 60(b) motions should be denied where they are merely an attempt to relitigate the case.” String-fellow v. Stringfellow, 451 So.2d 219, 221 (Miss.1984). Given the peculiar twists and turns this case took over six years, the agreement between Noble House and Ransom, without notice to W & W Plumbing, together with the Rule 60(b)(6) motion challenging the circuit judge’s amendment of the “agreed judgment of dismissal,” may well be construed as an attempt to relitigate the case.
¶ 23. A trial judge’s denial of a motion seeking relief under Rule 60(b)(6) is subject to review under an abuse of discretion standard. Telephone Man, Inc. v. Hinds County, 791 So.2d 208, 210 (Miss.2001); Moore v. Jacobs, 752 So.2d 1013, 1015 (Miss.1999). Among the factors a trial judge must consider when ruling on a 60(b)(6) motion are whether the movants have had a fair chance to state their claims, whether it would be inequitable to grant the relief sought as well as any other factors which are “relevant to the justice of the judgment under attack.” Briney v. United States Fidelity & Guaranty Co., 714 So.2d 962, 968 (Miss.1998). Given the particular circumstances of this case, the circuit judge did not abuse his discretion in amending the agreed order to provide the relief originally intended for W & W Plumbing or in denying the Rule 60(b)(6) motion.
¶ 24. Noble House and Ransom argue, however, that W & W Plumbing is not entitled to the interpled funds because the subcontractor did not proactively assert a claim to the funds. They contend that it first was necessary for W & W Plumbing either to file a stop notice pursuant to Mississippi Code Annotated section 85-7-181 (Rev.1999) or a construction lien or enforcement of a construction lien as authorized by Mississippi Code Annotated sections 85-7-131 (Rev.1999) and 85-7-141 (Rev.1999), or further, to seek recovery against Ransom, the contractor, before it could claim a share in funds deposited with the court through the Rule 22 interpleader action. However, following the statutory notice filing procedures is required only when a subcontractor seeks to pursue a statutory remedy against a property owner; it is not a pre-requisite to eligibility for *384 funds interpled pursuant to a Rule 22 action.

1. Rule 22 Interpleader

¶ 25. Rule 22(a) of the Mississippi Rules of Civil Procedure provides for an interpleader action as follows:
Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such inter-pleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20.
The action may be used “to protect the claimants by bringing them together in one action and reaching an equitable division of a limited fund.” M.R.C.P. 22 cmt.
¶ 26. As we explained in Chic Creations of Bonita Lakes Mall v. Doleac Electric Co., 791 So.2d 254, 257 (¶ 10) (Miss.Ct.App.2000), “[t]he Rule 22 interpleader action provides only the procedural vehicle to assert claims to the specific funds. The rule by itself cannot be the basis for a pro-rata distribution. In order for the subcontractors to assert a valid claim to this fund they must do more than show that they are owed money by the contractor. They must demonstrate how they are entitled to a portion of this particular fund.... ” W & W Plumbing was brought into this litigation by Noble. House, which specifically interpled into court funds admittedly owed to the subcontractor, while Noble House, the owner, and Ransom, the contractor, attempted to settle the contract issues that had arisen between them. Noble House’s “filing of this interpleader action sufficiently demonstrated that it was willing to pay whomever the trial court determined had a valid claim to the interpled funds.” Amer-ihost Dev., Inc. v. Bromanco, Inc., 786 So.2d 362, 367 (¶24) (Miss.2001). We note, moreover, that Noble House actually deposited with the court only that amount agreed by the parties to be due W & W Plumbing; it was never required to inter-plead the entire sum specified in the original pleadings.
¶ 27. The comment to Rule 22 acknowledges that generally, “claimants will have asserted their claims to the interpleader fund in their answer to the stakeholder’s complaint. If an order of interpleader is entered, each claimant must then traverse the claims of the other claimants, thus joining the issue. Alternatively, if the issues are already clearly defined in the claimants’ initial pleadings, further pleadings may be unnecessary.” M.R.C.P. 22 cmt. (emphasis added). The complaint of Noble House, the stakeholder, together with the original responses to the complaint filed by the claimants, Ransom and W & W Plumbing, clearly articulated the issues. From the pleadings, it is evident that both Noble House and Random knew and acknowledged that W & W Plumbing had not been paid for the work it had completed on the Noble House project, and that the subcontractor was owed $25,105.27. Invoices to Ransom from W & W Plumbing provide further evidence of the unpaid balance. Because the amount owed to W & W Plumbing did not exceed the funds interpled, W & W would have no further claim against Noble House. Hum *385 ble Oil & Refining Co. v. Rankin, 207 Miss. 402, 411, 42 So.2d 414, 416 (1949).
¶ 28. W & W Plumbing did, however, promptly file a motion for summary judgment, in essence, seeking a declaration of its interest in the interpleader funds. The Comment to Rule 22 provides that “[s]um-mary judgment may be granted in favor of any one of the claimants against any other, even before the former serves an answer to the latter’s pleading, a procedure generally appropriate under Rule 56(b).”[3] M.R.C.P. 22 cmt. Since the initial pleadings clearly defined the issues, further pleadings were unnecessary. Thus, entitlement to funds placed in escrow pursuant to a Rule 22 interpleader action may be determined on the basis of the pleadings or any other outside evidence introduced. It need not be predicated upon satisfaction of statutory notice procedures.

2. The § 85-7-181 “Stop Notice” Action

¶29. Noble House and Ransom assert, however, that W & W Plumbing is not entitled to share in the interpleader funds because’ it did not timely file a “stop notice” with Noble House pursuant to Mississippi Code Annotated section 85-7-181 (Rev.1999). “Only those with a direct contractual relation with the owner’s contractor can file an effective stop notice, and then only to require the retention of funds owed by the owner to the contractor.” Chic Creations, 791 So.2d at 258 (¶ 14). In the initial pleadings and throughout the first three years of these proceedings, the parties and the court recognized W & W Plumbing as a subcontractor. As a subcontractor, W.W. Plumbing was eligible to seek the protection offered by the statute.
¶ 30. Filing a “stop notice” with the owner is a pre-requisite to • pursuing the subcontractor’s statutory remedy outlined in § 85-7-181-. Once a subcontractor who has not received payment for his work by a contractor provides the property owner with written notice, he is entitled to payment from the owner up to the amount the owner is indebted to the general contractor as of the date the notice is served. Miss.Code Ann. § 85-7-181 (Rev.1999). Having failed to file a stop notice with Noble House after the drafts still owing were not paid by Ransom, W & W Plumbing stands only as a general creditor of Ransom, the contractor, with no right of recovery directly against Noble House, the owner. Corrugated Indus., Inc. v. Chattanooga Glass Co., 317 So.2d 43, 47 (Miss.1975). Indeed, the circuit judge correctly found that W & W Plumbing’s only relief lay with the funds ostensibly interpled on its behalf, and not in any action against either Noble House or Ransom.

3. The §§ 85-7-131 and 85-7-1U Mechanic’s Lien

¶ 31. In its amended response filed in June, 2000, W & W Plumbing asserted for the first time that it had worked as an independent contractor for both Noble House and Ransom, operating directly under the supervision of Noble House. Noble House denied this assertion. Indeed, in his order granting summary judgment for W & W Plumbing, the circuit judge found that W & W Plumbing had worked for both Noble House and Ransom, but did not label the plumber either as a subcontractor or a general contractor. Noble House and Ransom, nevertheless, suggest that W & W Plumbing should have asserted its claim by filing a *386 mechanic’s lien pursuant to § 85-7-131 and by pursuing an action thereunder pursuant to § 85-7-141. Contractors are entitled to a lien against the property if they are not paid for their services and materials. Chic Creations, 791. So.2d at 259 (¶ 20). Section 85-7-131 allows only “architects, engineers, surveyors, laborers, and materialmen and/or contractors” to secure a lien against the owner’s property for services rendered and improvements constructed. Cummings v. Davis, 751 So.2d 1055, 1058(¶ 14) (Miss.Ct.App.1999). The remedy does not extend to subcontractors, who, according to the statutory scheme, must pursue a separate remedy under § 85-7-181. Chic Creations, 791 So.2d at 259 (¶ 20). At the time a lien could have been filed and throughout most of these proceedings, W & W Plumbing held itself out as a subcontractor and thus, was not entitled to the remedy provided to contractors pursuant to §§ 85-7-131 and 85-7-141.
¶ 32. Assuming arguendo that W & W may be characterized as something other than a subcontractor and could have afforded itself protection with a mechanic’s lien, we note that there is no evidence in the record that Ransom, the contractor, filed a lien against Noble House pursuant to § 85-7-131 for the $72,356 allegedly it was due. upon completion of the project. If we were to extend the logic of Noble House’s and Ransom’s argument against W & W Plumbing’s entitlement to the interpleader funds to Ransom, we would have to find that Ransom, too, was just a creditor of Noble House without the priority of a lienholder and thus, on an equal footing with W & W Plumbing. Moreover, it appears from- the record that the only liens filed throughout the course of litigation wete those filed by Noble House’s former attorneys against any proceeds the project owner might recover.
II. WHETHER ANY AND ALL CLAIMS BY W & W PLUMBING AGAINST RANSOM AND NOBLE ' HOUSE WERE TIME-BARRED
¶ 33. Noble House and Ransom further contend that any cause of action against them or claim to the interpled funds is time-barred. They suggest that because the statutes of limitations have run on the remedies W & W Plumbing might have pursued, it is not entitled to share in the interpleader funds. The passage of time is not fatal to W & W Plumbing’s entitlement to the interpled funds. Pursuing statutory remedies is not a prerequisite to a Rule 22 interpleader action. Indeed, W & W Plumbing is in the same position as Ransom, which from the record, similarly does not appear to have timely availed itself of any statutory remedies. Moreover, since the inception of this litigation, Noble House has maintained, and the decisions of the circuit judges have consistently stated, that W & W Plumbing has no claim against Noble House, itself. Noble House cannot now argue that any action against it is time-barred. There is no merit to the assignment of error.
CONCLUSION
¶ 34. An interpleader action, the Comment to Rule 22 suggests, “can be employed to reach an early and effective determination of a disputed question with a consequent saving of trouble and expense for the parties.” Despite the circuit judge’s efforts “to reach an early and effective determination of a disputed question,” trouble and expense for the parties mounted during the six years of litigation, culminating with the circuit court’s challenging the propriety of the parties’ attorneys’ actions in unilaterally denying W & W Plumbing’s entitlement to the funds interpled to the court on its behalf. The circuit judge correctly found that W & W *387 Plumbing was entitled to recover only against the interpleader funds and not against Noble House and Ransom. Entitlement to those funds was a finding for the court to make, not the parties. Thus, the circuit judge did not abuse his discretion in granting partial summary judgment for W & W Plumbing, amending the agreed judgment of dismissal to protect the rights of the parties which were already adjudicated and denying the motion to alter or amend the judgment. Accordingly, we affirm the judgment of the circuit court.
¶ 35. THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., BRIDGES, P.J., LEE, MYERS, GRIFFIS AND BARNES, JJ., CONCUR. IRVING DISSENTS WITH SEPARATE WRITTEN OPINION.

. By letter dated September 23, 1996, Ransom represented to Noble House that all debts related to the construction had been paid and no claims had been asserted against the contractor. The debt owed to W & W Plumbing arose after this time.

. It is not clear from the record what role, if any, Cumberland Surety & Performance Co., Inc. played in the settlement between Ransom and Noble House and in the agreed dismissal.

. Interpleader is an , equitable action. "[W]hen equity takes jurisdiction of a matter for one purpose it will administer complete relief as to every portion or feature of the controversy.and, so far as practicable, quiet the whole of the issues.” Humble Oil, 207 Miss, at 412, 42 So.2d at 417, quoting Griffith's Mississippi Chancery Practice § 101.