MAXWELL, J.,
for the Court:
¶ 1. Leon Berryman and his daughter Ariel Berryman were named among the defendants in an interpleader action in which an auto insurer deposited $50,000 in the DeSoto County Chancery Court. The chancellor awarded the entire $50,000 to defendants Glynes Lannom and Daniel Lannom. The Berrymans appealed, arguing the chancellor denied their claims based on a misapplication of the law. Because we find the Berrymans failed to show they were entitled to a portion of the interpleaded funds, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On June 11, 2008, Esurance Insurance Company (Esurance) filed a complaint for interpleader. See M.R.C.P. 22. Esurance had issued automobile liability insurance to Larry Setzer with a maximum liability limit of $25,000 per person and $50,000 per accident. On April 17, 2007, during Esurance’s coverage period, Setzer collided into Glynes’s Buick Park Avenue, injuring her, killing her two sons, Jacob and Zachary Lannom, and paralyzing a fourth passenger, Philip Bieselin.[1] Joaquin Gonzales’s car and Leon’s eighteen wheeler, in which Ariel was a passenger, were also involved in the accident.
¶ 3. Esurance named Glynes (individually and as representative for Zachary and Jacob); the boys’ father, Daniel (as representative for Zachary and Jacob); Biese-lin; Gonzales; and both Berrymans as in- *1241 terpleader defendants, alleging they all had made claims against Setzer. The complaint also alleged Glynes and Daniel had sued Setzer for the wrongful deaths of Jacob and Zachary. Attached to Esu-rance’s interpleader complaint was a copy of Glynes and Daniel’s tort complaint.
¶ 4. The Berrymans answered the inter-pleader complaint and requested the full policy limits from the interpleaded funds. But in their answer, they made no allegation that either was entitled to the insurance proceeds due to injuries caused by Setzer.
¶ 5. On October 12, 2010, Daniel filed a petition to disburse the funds. The docket reflects a notice of hearing on his petition was also filed that same day. The Berry-mans filed no response to Daniel’s petition. On October 25, 2010, the chancellor heard the petition. Because there was no transcript of this hearing, the Berrymans prepared a statement of evidence in absence of a transcript. See M.R.A.P. 10(c). Glynes and Daniel objected to this statement as not reflecting what truly occurred at the hearing and submitted their own statement. See M.R.A.P. 10(c), (e). After considering both statements, the chancellor held the Berrymans’ statement did “not represent the Court’s recollection of the events which took place at [the] hearing,” but Glynes and Daniel’s “rendition of the facts, as stated by the Court in the record of this hearing, is an accurate statement of the events at the hearing.” See M.R.A.P. 10(e) (“If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth.”). The statement of evidence approved by the chancellor memorializes that the Berrymans’ attorney was present at the hearing but neither put forth any evidence supporting the Berrymans’ claim to the interpleaded funds nor asked for a continuance.
¶ 6. The chancellor found that, because the Berrymans failed to file an action against Setzer within the three-year statute of limitations, they could not recover any portion of the $50,000. The chancellor ordered the $50,000 be split equally between Glynes and Daniel because “[b]oth have suffered significant damages in the loss of the two sons.” The same day as the hearing, the attorneys for Glynes and Daniel presented the chancellor’s order to the clerk’s office, which disbursed the in-terpleaded funds.
¶ 7. On November 18, 2010, the Berry-mans filed a notice of appeal of the October 25, 2010 order. The docket reflects that in January 2011, they filed a motion for stay pending appeal. In May 2011, the chancellor entered a nunc pro tunc order denying the motion to stay as untimely filed.
STANDARD OF REVIEW
¶ 8. We will not disturb the findings of the chancellor “unless the chancellor was manifestly wrong, clearly erroneous, or applied the wrong legal standard.” McNeil v. Hester, 753 So.2d 1057, 1063 (¶ 21) (Miss.2000) (citations omitted). The standard of review of a chancellor’s factual finding is abuse of discretion. Id. But “for questions of law, the standard of review is de novo.” Id.
ISSUES ON APPEAL
¶ 9. The Berrymans argue the chancellor erred both by denying them any portion of the interpleaded funds and by denying their motion to stay disbursement of the funds to Glynes and Daniel pending appeal. They also argue Glynes’s and Daniel’s attorneys violated the ten-day automatic stay of judgment by presenting the *1242 order of disbursement to the chancery clerk the same day as the hearing.
¶ 10. The Berrymans further assert the attorneys’ actions violated ethical rules, meriting sanctions. We find this allegation to be wholly baseless and focus our opinion solely on whether a reversible procedural error was committed. The Berry-mans also describe the chancellor’s decision to deny their motion to stay as “a perversion of the administration of justice” and request we appoint a new chancellor on remand because Chancellor Vicki Cobb abdicated her role as “officer of a court of law and equity.” Because this last argument — which has no support in the record — shows disrespect for the chancellor, we sua sponte strike this argument and its contemptuous language from the Berry-mans’ brief. M.R.A.P. 28(k). We focus solely on whether the chancellor erroneously applied the law or was manifestly wrong. See McNeil, 753 So.2d at 1063 (¶ 21).
DISCUSSION
I. The Chancellor’s Award of the In-terpleaded Funds
A. Interpleader
¶ 11. Rule 22 of the Mississippi Rules of Civil Procedure provides a mechanism for a “stakeholder” — “[a] disinterested third party who holds money or property, the right to which is disputed between two or more other parties”[2] — to divest himself of the money without suffering liability for disbursing the money to the wrong party. M.R.C.P. 22 cmt. Under Rule 22(b):
Any party seeking interpleader ... may deposit with the court the amount claimed, or deliver to the court or as otherwise directed by the court, the property claimed, and the court may thereupon order such party discharged from liability as to such claims and the action shall continue as between the claimants of such money or property.
¶ 12. “Ordinarily, interpleader is conducted in two ‘stages.’ ” M.R.C.P. 22 cmt. “In the first, the court hears evidence to determine whether the plaintiff is entitled to interplead the defendants.” Id. “In the second stage, a determination is made on the merits of the adverse claims.... ” Id. This appeal involves the second stage only. The Berrymans do not object to the chancery court’s order that Esurance deposit the money and then be dismissed from the case. But stage one is relevant to the extent that being named an interpleader defendant in stage one does not necessarily entitle a defendant to a portion of the interpleaded funds in stage two.
¶ 13. Under Rule 22, the presence of multiple potential, unliquidated claims is enough to permit a stakeholder to inter-plead. See M.R.C.P. 22 cmt. (“The purpose of Rule 22, interpleader, is to permit a stakeholder ... to join those who are or who might assert claims against him ....”) (emphasis added). In cases involving multiple claims to insurance proceeds, courts have recognized that an insurer does not have to wait until multiple claimants reduce their claims to judgment before the insurer can take advantage of the interpleader procedure. E.g., State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 532, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967); Club Exch. Corp. v. Searing, 222 Kan. 659, 567 P.2d 1353, 1357-58 (1977). Because the procedures of Rule 22 can be invoked when claims are merely potential and un-liquidated, “[t]he rule by itself cannot be the basis for a pro-rata distribution.” Chic Creations of Bonita Lakes Mall v. Doleac Elec. Co., 791 So.2d 254, 257 (¶ 10) (Miss.2000). Thus, the mere fact Esurance *1243 named the Berrymans as claimants does not in itself entitle them to a portion of the interpleaded fund.
¶ 14. The Berrymans also have to “demonstrate how they are entitled to a portion of this particular fund[.]” Id.; see also Island Title Corp. v. Bundy, 488 F.Supp.2d 1084, 1090 (D.Haw.2007) (“In an interpleader action, each claimant must establish his right to the property by a preponderance of the evidence.”). In Chic Creations, this court rejected the argument that stage two is simply about distribution to the interpleader defendants. Chic Creations, 791 So.2d at 257 (¶ 10). “If an order of interpleader is entered, each claimant must then traverse the claims of the other claimants.... ” M.R.C.P. 22 cmt. See Chic Creations, 791 So.2d at 257 (¶ 11) (finding the primary claimant “had every entitlement to the money unless it could be shown that the other defendants had a better claim”).
¶ 15. “Once money is deposited into the court’s registry, the money is held by the court pending a determination of which party’s claim is superior.” White v. Fed. Deposit Ins. Corp., 19 F.3d 249, 252 (5th Cir.1994). “In other words, ‘the court can be said to have taken custody of the money for the benefit of the rightful owner, creating a trust for the purpose of preserving the funds and thereby securing the rightful owner’s claim to them.’ ” Id. (quoting Avant Petroleum, Inc. v. Bangue Paribas, 853 F.2d 140, 145 (2nd Cir.1988)). “As the entire point of an interpleader action is to resolve then competing rights and claims, it makes perfect sense that the action itself cannot be used as a vehicle for further jockeying for claim position.” Texaco, Inc. v. Ponsoldt, 118 F.3d 1367, 1370 (9th Cir.1997).
B. The Berrymans’ Claim
¶ 16. On appeal, the Berrymans argue the chancellor erred by holding their failure to file suit against Setzer within the three-year statute of limitations barred their claim to the interpleaded funds because: (1) the passage of time is not fatal to a claimant’s entitlement to interpleaded funds; and (2) the statute of limitations had not run against Ariel, a minor at the time of the accident. We find the chancellor properly held Leon’s claim was inferior to Glynes and Daniel’s because Leon did not file suit within the statute of limitations. Even though the statute of limitations is tolled against Ariel until she is of age, we affirm the chancellor’s denial of Ariel’s claim based on her failure to plead and prove injuries that would entitled her to a portion of the interpleaded funds.
1. The Effect of the Statute of Limitations
¶ 17. The Berrymans argue the chancellor erred by holding filing a lawsuit against Setzer was a prerequisite to making a claim to the interpleaded funds, citing this court’s opinion in Noble House, Inc. v. W & W Plumbing & Heating, Inc., 881 So.2d 377, 383-84, 386 (¶¶ 24, 33) (Miss.App.2004). Upon a closer reading of Noble House, in conjunction with Ellis v. Anderson Tully Co., 727 So.2d 716 (Miss.1998) — an interpleader case in which the Mississippi Supreme Court addresses the very same statute-of-limitations argument — we find no error in the chancellor’s ruling, so far as it concerns Leon.
¶ 18. Like this case, Ellis was an inter-pleader action filed by an auto insurer whose insured was involved in an accident. Ellis, 727 So.2d at 717 (¶ 3). Anderson Tully (ATCO) was the victim’s medical insurer, who had paid most of her medical expenses. Id. at 717 (¶ 2). Within a year of the accident, ATCO filed a declaratory-judgment action in circuit court to clarify the rights and obligations of the parties involved in the action. Id. at 717 (¶ 3). A *1244 year later, before the declaratory judgment was resolved, the driver’s insurer filed its interpleader complaint in chancery court. Id. at 717,179 (¶¶ 3,16). After the initiation of the interpleader action but before the three-year statute of limitations ran, the victim filed suit. Id. The victim argued ATCO’s “claim to the interpleaded funds is barred by the statute of limitations because ATCO failed to file suit against [the driver] within three years of the date of the accident.” Id. at 718-19 (¶ 15). The supreme court held the victim’s “claim that ATCO’s right to the in-terpleaded funds is barred by the statute of limitations has no merit.” Id. at 719 (¶ 18). “By asking for a declaratory judgment, ATCO asserted its rights to any funds paid to [the victim for her] medical expenses. ATCO did so within the three year statute of limitations and thus is not barred from collecting any funds paid to [the victim] under the subrogation agreement.” Id. at (¶ 17).
¶ 19. In this case, Leon does not argue he asserted his rights within the statute of limitations. Instead, he argues he did not have to. But in Ellis, the supreme court did not dismiss the victim’s statute-of-limitations argument because it was not relevant. It dismissed the argument based on the merits. Id. Thus, according the to supreme court, a claimant’s timely assertion of its claim appears to be a relevant consideration when evaluation his right to the interpleaded funds.
¶ 20. Noble House began as a breach-of-contract action between a property owner (Noble House) and a contractor (Ransom). The owner interpleaded the final installment payment for the construction and named as an interpleader defendant the subcontractor (W & W Plumbing) that had indisputably not been paid for its work on the project. Noble House, 881 So.2d at 379-80 (¶ 5). Five and a half years later, after various motions for summary judgment and court rulings, Noble House and Ransom submitted a settlement agreement to the circuit court, without notifying W & W Plumbing and without awarding it any portion of the interpleaded funds. Id. at 381 (¶ 14). Before approving the settlement, the circuit court awarded W & W Plumbing $25,105.27 from the interpleaded funds. Id. On appeal, Noble House and Ransom argued W & W Plumbing was not entitled to the funds because it, among other reasons, W & W Plumbing did not seek recovery against Ransom the within the applicable statutes of limitations. Id. at 386 (¶ 33). This court rejected this argument, stating “[t]he passage of time is not fatal to W & W Plumbing’s entitlement to the interpled funds.” Id. at 386 (¶ 33).
¶ 21. Relying on this statement, Leon argues he did not have to timely pursue his claim against Setzer to be entitled to the Esurance funds. See id. But Leon neglects to consider this court’s follow-up statement in Noble House: “Indeed, W & W Plumbing is in the same position as Ransom, which from the record, similarly does not appear to have timely availed itself of any statutory remedies.” Id. (emphasis added). Here, Leon was not in the same position as Glynes and Daniel. Unlike Leon, they did timely avail themself of the remedy of bringing a tort claim against Setzer. So even if the passage of time was not “fatal” to Leon’s claim to the inter-pleaded funds, as the chancellor found it was, it certainly put Leon in an inferior position. But see Ellis, 727 So.2d at 719 (¶¶ 17-18) (not discussed by Noble House) (holding ATCO’s claim was not barred because its declaratory action was a timely assertion of its right to the interpleaded funds).
¶ 22. Interpleader is an equitable remedy. See First Nat’l Bank of Vicksburg v. Middleton, 480 So.2d 1153, 1156 (Miss.1985) (discussing equitable origin of *1245 interpleader procedure); see also M.R.C.P. 22 cmt. (“Interpleader also can be used to protect the claimants by bringing them together in one action and reaching an equitable division of a limited fund.”). And it cannot be used as a vehicle by which a claimant gains a superior position in respect to other claimants than he would otherwise have. White, 19 F.3d at 252; Ponsoldt, 118 F.3d at 1370. At the time Esurance filed the complaint for in-terpleader, Glynes and Daniel could reduce their claim to a judgment, but Leon could not, making his claim inferior. To the extent this court’s Noble House can be interpreted as holding the statute of limitations is not a legal bar — and this holding can be viewed consistent with Ellis — it was nonetheless within the chancellor’s discretion to hold Glynes and Daniel had a superior claim because they timely sued Setzer, while Leon did not. Cf. Noble House, 881 So.2d at 383 (V 22), 386 (¶33) (affirming award of interpleader funds to W & W Plumbing in large part because none of the parties in the six-year litigation had timely pursued a resolution). Thus, we find no error in the chancellor’s denial of Leon’s claim based on his failure to file a claim against Setzer within the three-year statute of limitations.
2. The Failure to State a Superior Claim
¶ 23. Ariel is in a different position because she is a minor and still potentially able to pursue a judgment against Setzer, based on the tolling provision for minors under Mississippi Code Annotated section 15-1-59 (Rev. 2003). While we find the chancellor’s application of the statute of limitations against Ariel was error, we affirm the chancellor’s denial of Ariel’s claim, as we find it was the correct result. See Methodist Hosp. of Hattiesburg, Inc. v. Richardson, 909 So.2d 1066, 1070 (¶ 7) (Miss.2005) (citing Puckett v. Stuckey, 633 So.2d 978, 980 (Miss.1993)) (“An appellate court may affirm a trial court if the correct result is reached, even if the trial court reached the result for the wrong reasons.”).
¶ 24. Ariel had the responsibility to show she was entitled to a portion of the Esurance proceeds. See Chic Creations, 791 So.2d at 257 (¶ 10). Though the Ber-rymans were notified about Daniel’s petition to disburse funds and the October 25, 2010 hearing on the petition, Ariel neither responded to the motion nor presented any evidence at the hearing showing she was entitled to a portion of the funds. On appeal, she references no evidence she would have put on to prove her claim, had she been allowed the evidentiary hearing she claims the chancellor improperly denied her. Instead, she relies on the pleadings, which she argues clearly assert a claim to the funds. But in Ariel’s inter-pleader answer, she did not allege she had suffered an injury that would entitle her to a portion of the funds. The only generic allegation of injury is made in the Berry-mans’ statement of the evidence, which was rejected by the chancellor. And the only reference in the record to Ariel’s involvement in the wreck reveals that Ariel declined to be taken to the hospital after being examined by paramedics at the accident scene.
¶ 25. In contrast, the interpleader complaint alleged Jacob and Zachary died in the accident and that Glynes and Daniel had filed a wrongful death suit against Setzer. Ariel admitted these allegations to be true in her answer. Given the extent of the Glynes and Daniel’s damages and comparing them to Ariel’s unpleaded and unspecified “injuries,” we find no error in chancellor’s dividing the entire interpleader fund between the Lannoms, without awarding Ariel any portion.
*1246 II. Glynes and Daniel’s Immediate Withdrawal of the Interpleaded Funds
¶ 26. The Berrymans argue Glynes and Daniel’s immediate withdrawal of the interpleaded funds from the chancery court, the same day as the disbursement hearing, violated the ten-day automatic stay of judgments in Rule 62(a). M.R.C.P. 62(a) (“[N]o execution shall be issued upon a judgment nor shall proceedings be taken for its enforcement until the expiration of ten days after the later of its entry or the disposition of a motion for a new trial.”). While Glynes and Daniel did technically violate Rule 62(a), the Berry-mans have failed to show this violation warrants reversal.
¶27. As the comment to Rule 62 explains, the purpose of the automatic stay is to allow “the party against whom judgment has been entered to determine what course of post-judgment action he wishes to follow.” M.R.C.P. 62 cmt. If the losing party wants to file a motion for new trial or judgment notwithstanding the verdict, his motion filed within the ten-day post-judgment period will stay the judgment pending disposition of the motion. But if the party “prefers to appeal,” he can file a notice of appeal within thirty dáys of the judgment “and seek a stay pending appeal as provided in Rule 62(c) and (d).” Id.
¶ 28. The course the Berrymans chose to follow was to appeal, filing their notice on November 18, 2010. Two weeks prior, on November 4, 2010, the automatic stay had expired because the Berrymans had elected not to file a post-judgment motion that would have furthered stayed the judgment pending the motion’s resolution. Because the stay expired before the Berry-mans filed their notice of appeal and well before they filed their January 19, 2011 motion to stay, the Berrymans cannot show they would have been in any different position had Glynes and Daniel waited until November 4, 2010, to withdraw the funds.
¶ 29. In making their automatic-stay argument, the Berrymans seek to take advantage of a temporary restraining order (TRO) filed by another interpleader defendant, Bieselin. They go so far as to allege the failure to notify their attorney of the expiration of Bieselin’s TRO was part of a deliberate and unethical plot by Glynes’s and Daniel’s attorneys to deprive the Berrymans of their rights to the funds. But we find any reliance by the Berry-mans on Bieselin’s TRO is misplaced.
¶ 30. The right to a TRO is personal to the applicant upon meeting the requirements of Rule 65(b). See M.R.C.P. 65(b). The docket reflects Bieselin — not joined by the Berrymans or any other interpleader claimants — filed a TRO on November 4, 2010, and after the TRO was granted, posted bond on November 22. The Berry-mans would have had to join the TRO in order to claim any right to enforce or extend it, and there is no evidence they did. Id.
¶ 31. In their brief, the Berrymans allege their attorney was present at the TRO hearing and, thus, entitled to notice of when the TRO expired. But there is no record evidence to support his participation. In fact, the Berrymans did not designate as part of the appellate record any documents related to Bieselin’s TRO. Without the TRO as part of the record, there is no record evidence of when the TRO expired and who did or did not receive notice. See M.R.C.P. 65(b) cmt. (“Once entered, a temporary restraining order expires by its terms.”).
¶ 32. Because they did not join the TRO, the Berrymans could not depend on the TRO to stay the disbursement of the funds to Glynes and Daniel. To insure the judgment was stayed pending their appeal, they were required to move for a stay and *1247 put up security. See M.R.C.P. 62(d) (“When an appeal is taken, the appellant, when and as authorized by statute or otherwise, may obtain a stay subject to the exceptions contained in subdivision (a) of this rule.”); M.R.A.P 8(b) (Application for stay of a judgment pending appeal — other than a stay of execution of a money judgment addressed in 8(a) — must be made with the trial court, and the trial court must require the appellant to give security).
¶ 33. The Berrymans did not seek a stay until January 19, 2011 — two months after the automatic stay expired. The chancellor denied this motion as untimely. Though the Berrymans appeal this decision, we find this issue moot, as the entire point of a stay pending appeal is to stay the judgment pending appeal.
CONCLUSION
¶ 34. We find no reversible error in Glynes and Daniel’s violation of the automatic stay, as it resulted in no prejudice to the Berrymans, who on appeal have not shown any right to a portion of the inter-pleaded funds. Thus, we affirm the chancellor’s judgment awarding the $50,000 in interpleaded funds to Glynes and Daniel.
¶ 35. THE JUDGMENT OF THE DE-SOTO COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, RUSSELL AND FAIR, JJ., CONCUR.

. The wreck is described in more detail in Setzer’s criminal appeal, Setzer v. State, 54 So.3d 226 (Miss.2011).

. Black's Law Dictionary 1440 (8th ed. 2004).